UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEYON TIMMONS,

       Petitioner,                                Case Number 12-12336
                                                         Honorable Victoria A. Roberts

v.

LLOYD RAPELJE,

       Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3)
DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Oakland Circuit Court of assault with intent to commit murder, MICH. COMP. LAWS §750.83, three counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS §750.227b, felon in possession of a firearm, MICH. COMP. LAWS §750.224f, discharge of a firearm at a building, MICH. COMP. LAWS §750.234b, possession of marijuana, MICH. COMP. LAWS §333.7403(2)(d), and malicious use of telecommunications services, MICH. COMP. LAWS §750.540e. Petitioner was sentenced on March 18, 2010, to 50-to-80 years' imprisonment for the assault with intent to commit murder conviction, and a consecutive five-year term on the felony-firearm convictions. He was sentenced to lesser concurrent terms for his other convictions.

The petition raises six claims: (1) the trial court incorrectly scored the sentencing guidelines; (2) the trial court erroneously imposed a sentence outside the sentencing guidelines; (3) Petitioner was denied the effective assistance of counsel; (4) Petitioner's double jeopardy rights were violated

1

by the imposition of multiple punishments for one criminal transaction; (5) the prosecutor

committed misconduct; and (6) the trial court erroneously reassigned the trial judge.

The petition will be denied because none of Petitioner's claims has merit. The Court also

denies Petitioner a certificate of appealability and permission to proceed in forma pauperis.

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). See *Wagner v.*

*Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from a shooting at 390 Shummard Branch in Oxford,
> Michigan on September 9, 2009. In September 2009, defendant and Heather Warner
> were involved in a romantic relationship. The two were engaged to be married and
> lived together in Pontiac. Heather had two children from a prior relationship and was
> pregnant with defendant's child. The two were dating for about two years; however,
> defendant was physically abusive, and Heather occasionally displayed bruises and
> black eyes as a result of defendant's abuse. On September 8, 2009, and September
> 9, 2009, defendant and Heather had been arguing. Defendant made threatening
> statements to Heather while she was at work. She called the police and intended to
> stay at a women's shelter. Further infuriated when confronted by the police,
> defendant told Heather that she was going to regret having called the police. When
> Heather refused to tell defendant where she was, he threatened to "blow your
> cousin's head off." Defendant then said, "fuck [your] cousin . . . I'm [sic] after your
> mom and your brother and I know where they are." Defendant said he was going to shoot
> them. Heather continued to refuse to tell defendant where she was, and he said,
> "[T]hey can thank you for your actions." Defendant indicated that if Heather told
> him where she was going, no one would get hurt. Heather started to cry and told
> defendant that she was going to the Haven shelter. Defendant got upset and told
> Heather that she and their unborn child did not belong there. Defendant called
> Heather again and said, "fuck your mom and your brother, I'll get them later. I'm
> going to kill your kids."
>
> Defendant then proceeded to Heather's sister's house where Heather's
> children were located. Heather's five-year-old niece, [J.B.], answered the door.
> Defendant shot her in the face. Though [J.B.] survived the shooting, she suffered
> serious injuries and will endure a lifetime of disfigurement and hearing loss.

*People v. Keyon Timmons*, No. 297670, 2011 WL 4467673, at *1 (Mich. Ct. App. Sept. 27, 2011).

2

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan

Court of Appeals. His appellate counsel filed a brief which raised the following three claims:

> I. Whether the trial Court violated Appellant's due process rights by mis-scoring OV 10 and OV 19; therefore, using the wrong sentencing offense variable total.

> II. Whether this case must be remanded to the trial court for resentencing as some reasons for departing from the recommended minimum sentence do not qualify as objective, verifiable, substantial and compelling reasons that are not otherwise accounted for in the guidelines; Furthermore, the trial court failed to justify the extent of the departure under *People v. Smith*, 482 Mich 292 (2009).

> III. Whether Mr. Timmons was denied his state and federal constitutional rights to the effective assistance of trial counsel where counsel failed to investigate and raise the defense of insanity.

After his counsel's brief was filed, Petitioner filed a pro se supplemental brief, which raised

an additional five claims:

> I. Petitioner's trial attorney was ineffective for failing to present mitigating evidence at sentencing.

> II. Petitioner's multiple sentences for one criminal transaction violate the Double Jeopardy Clause.

> III. The prosecutor committed misconduct by allowing presenting perjured testimony.

> IV. Trial counsel was ineffective for failing to adequately prepare for trial.

> V. The trial court erred when it substituted trial judges contrary to Michigan law.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion.

*Timmons*, 2011 WL 4467673, at *1, 13. Petitioner subsequently filed an application for leave to

appeal in the Michigan Supreme Court which raised the same claims that he presented to the

Michigan Court of Appeals. Petitioner also asserted that he was entitled to an evidentiary hearing

on his ineffective assistance of counsel claim. The Michigan Supreme Court denied the application

because it was "not persuaded that the questions presented should be reviewed." *People v.*

*Timmons*, 809 N.W.2d 594 (Mich. 2012) (unpublished table decision).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court

decision must be consistent with the respect due state courts in our federal system." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for

evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the

4

doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with "the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford*, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well

5

understood and comprehended in existing law beyond any possibility for fairminded disagreement."
*Harrington*, 131 S. Ct. at 786-87.

## III. Discussion

### A. Sentencing

Petitioner says that the trial court erred in scoring the sentencing guidelines. Specifically, he argues that the trial court never made a definitive ruling on his objections to the scoring of two offense variables. The variables concerned exploitation of a vulnerable victim and interference with the administration of justice. Petitioner was assessed points for both these variables. Petitioner's second claim asserts that the trial court did not state adequate reasons for departing upward from the already improperly scored sentencing guideline range. The claims are not cognizable in this action.

A state court's interpretation and application of sentencing guidelines present only issues of state law that are not cognizable on habeas review. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 63 (1991). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.* at 68. "Petitioner has no state-created constitutional interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." See *Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). Therefore, his challenge to the scoring of the sentencing guidelines is not reviewable by this Court. See *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003).

Petitioner also challenges the trial court's upward departure from the Michigan sentencing guidelines. Petitioner not only has no federal right to a particular scoring of the guidelines; he has no constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations. *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial

6

court in departing above the sentencing guidelines range does not merit habeas relief. *Id.*

Accordingly, Petitioner's first two claims are without merit.

**B. Ineffective Assistance of Counsel**

Petitioner's asserts that his trial counsel was ineffective. Petitioner argues that his counsel: (1) failed to raise an insanity defense; (2) failed to offer mitigating evidence at sentencing regarding his mental illness; (3) was not prepared for trial; and (4) did not object to the reassignment of his case to a different judge for trial. Petitioner also claims that he was wrongfully denied an evidentiary hearing in the state courts on this claim.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

7

would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

The Supreme Court confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*.

Here, the Michigan Court of Appeals denied relief with respect to Petitioner ineffective assistance of counsel claim as follows:

> Defendant argues that defense counsel provided ineffective assistance because he failed to investigate and present an insanity defense. Whether a defendant has been denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v. Seals*, 285 Mich.App 1, 17 (2009). When reviewing claims of ineffective assistance of counsel this Court reviews the trial court's factual findings for clear error and its constitutional determinations are reviewed de novo. *People v. LeBlanc*, 465 Mich. 575, 579 (2002). Here, defendant preserved the claim of ineffective assistance of counsel by moving for a remand with this Court and requesting an evidentiary hearing; however, because this Court denied defendant's motion, review is limited to mistakes apparent on the record. *People v. Jordan*, 275 Mich.App 659, 667 (2007).

> Defendants have the guaranteed right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *People v. Aceval* (On Remand), 282 Mich.App 379, 386 (2009). Effective assistance of counsel is presumed, and the

8

defendant bears a heavy burden of proving otherwise. *LeBlanc*, 465 Mich. at 578. Generally, to establish an ineffective assistance of counsel claim, a defendant must show (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *People v. Davenport*, 280 Mich.App 464, 468 (2008). However, such performance must be measured without the benefit of hindsight. *Bell*, 535 U.S. at 698; *People v. LaVearn*, 448 Mich. 207, 216 (1995).

Defendant argues that defense counsel's failure to investigate and present an insanity defense deprived him of the right to the effective assistance of counsel. When a claim of ineffective assistance of counsel is based on the failure to present a defense, the defendant must show that he made a good faith effort to avail himself of the right to present that defense and that the defense was substantial. *In re Ayres*, 239 Mich.App. 8, 22 (1999). A substantial defense is one that might affect a trial's outcome. *People v. Kelly*, 186 Mich.App 524, 526 (1990). Defendant contends that defense counsel could have presented an insanity defense if defense counsel had inquired into defendant's medical history that revealed he was diagnosed with a mental illness. A person is legally insane if, "as a result of mental illness ... that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MCL 768.21a(1). "[M]ental illness ... does not otherwise constitute a defense of legal insanity." Id. Defendant has failed to assert that he made a good faith effort to avail himself of the defense. The mere fact that defendant was diagnosed with a mental illness is not enough to establish an insanity defense. He has not argued that his alleged mental illness resulted in the lack of capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the law, as required by MCL 768.21a. He also failed to show that the defense was substantial. Defendant contends that he submitted Michigan Department of Corrections (MDOC) records to show that he has a history of mental illness, i.e., bipolar disorder, and that his mental illness is significant enough to establish a defense of legal insanity. However, defendant provides no proof that he failed to appreciate the nature and quality of the wrongfulness of his conduct or that he lacked the capacity to conform his conduct to the law. Moreover, the trial record shows that defendant's conduct was purposeful. Defendant was angry with Heather, and he threatened to kill Heather's family. He obtained a gun, drove to Heather's family's house, knocked on the door, and shot Jordayna. He then fled the scene and disposed of the gun. Based on these facts, defendant did not lack the capacity to conform his conduct to the law because he came up with a plan and then executed that plan. Without a basis for concluding that insanity was a substantial defense, defendant's claim of ineffective assistance of counsel premised on this ground must fail because defense counsel is not ineffective for failing to pursue a meritless position. *People v. Snider*, 239 Mich.App 393, 425 (2000).

9

\*          \*          \*

Defendant has also filed a Standard 4 brief, see Michigan Supreme Court Administrative Order 2004-06, Standard 4, in which he raises several additional issues.

First, defendant contends that defense counsel was ineffective because he failed to investigate defendant's medical history and present the information as a mitigating factor at his sentencing. Defendant's assertion is simply not supported by the record. The presentence investigation report (PSIR) contains a recitation of defendant's mental health history. The PSIR indicates that defendant was diagnosed with bipolar disorder and clinical depression. It also notes the medications prescribed to treat defendant's mental health problems. At sentencing, the parties reviewed the PSIR. The trial court also indicated that it reviewed the PSIR that contained defendant's mental health history. Defendant's mental health history was provided to the trial court by means of the PSIR, and thus, defendant has failed to articulate an error by defense counsel or how that error would have a determinative effect on his sentencing. Defendant has also failed to articulate how defense counsel's failure to further investigate his medical history would have provided additional mitigating factors and how this failure fell below an objective standard of reasonableness. Accordingly, defendant has not shown that defense counsel was ineffective for failure to properly prepare for his sentencing.

Defendant argues that defense counsel was also ineffective for allowing the prosecution to elicit "Bad-Man Character Evidence." It appears that the "Bad-Man Character Evidence" defendant refers to was the evidence contained in a stipulation placed on the record revealing that defendant had a prior felony conviction. Defendant fails to show that defense counsel's acquiescence to the facts in the stipulation was unreasonable or prejudicial. The stipulation contained an element of the crime of felon in possession. The purpose of the stipulation is to minimize the prejudice to defendant. See *People v. Green*, 228 Mich.App 684 (1998). The unembellished stipulation was arguably the best way to deflect attention from defendant's prior crime of second-degree murder. Further, there is no reasonable probability that defense counsel's refusal to accept the stipulation regarding the felon in possession of a firearm charge would have changed the outcome of his trial. Defendant has failed to demonstrate that defense counsel's acquiescence to the fact that he had a prior felony fell below an objective standard of reasonableness.

To the extent defendant contends that the information in the stipulation was precluded by MRE 404(b), we disagree. MRE 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." At trial, the parties agreed to the following:

[W]e have a stipulation to place on the record as it relates to the felony in possession of firearm count. That the People and the

10

Defense would agree that the defendant had a prior felony conviction, and that he was ineligible to possess a firearm on September 9, 2009 because he was on parole at that time and hadn't regained eligibility.

The information provided was not used to imply anything relating to defendant's character. No implications or references were made by the prosecution regarding defendant's character or any similarity of the prior conviction to the acts currently charged. We hold that defendant has failed to demonstrate that the information in the stipulation resulted in prejudice.

Next, defendant contends that defense counsel was ineffective because he misadvised defendant about his right to testify at trial. Defendant claims that defense counsel told him that if he testified the prosecutor would have introduced "Bad-Man Character Evidence." Defendant asserts that this erroneous advice "deterred" him from exercising his right to testify and that his waiver of the right was not knowing or voluntary. The record does not support defendant's assertion, but rather, the record reflects that it was defendant's free and voluntary choice to testify.

At trial, defense counsel placed on the record that he informed defendant of his right to testify and defendant waived his right. The following colloquy ensued:

Defense Counsel: Your Honor, if I may, thank you for the time. My client is not going to testify. He understands he has a right to. And we have no witnesses to present.

The Court: All right.

The Prosecutor: Your Honor, if you just ask the defendant on the record if that's true, that's all we would require.

The Court: I don't usually ask them if it's not true they're not going to testify. But Mr. Timmons, did you hear what your attorney just represented?

The Defendant: Yes, your Honor.

The Court: It's my understanding you're not going to be taking the stand in this matter.

The Defendant: Right.

The Court: And you have the right to do that if you choose to.

The Defendant: Right.

11

The Court: And you're had an adequate opportunity to discuss that decision with your attorney?

The Defendant: Yes, maam

The Court: Do you have any questions of me or your attorney regarding your decision?

The Defendant: No.

Thus, when a defendant decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived. *People v. Simmons*, 140 Mich.App. 681 (1985). Accordingly, defendant's argument is without merit and he failed to overcome the presumption that defense counsel's advice not to testify was a reasonable trial strategy.

Defendant also argues that defense counsel's failure to request an adjournment violated his right to the effective assistance of counsel because defense counsel did not have an adequate opportunity to prepare for trial. Defendant frames this issue in his statement of questions presented; however, defendant does not explain his position or provide any analysis or discussion to support his argument. Defendant's failure to offer any meaningful discussion of this claim of error renders his claim abandoned. *People v. Martin*, 271 Mich. App. 280, 315 (2006). In any event, having thoroughly reviewed the transcripts, we conclude that defense counsel was clearly prepared for trial and offered defendant effective assistance. Defendant failed to establish that his defense counsel was ineffective.

*Timmons*, 2011 WL 4467673, *7-11.

The decision of the Michigan Court of Appeals passes scrutiny under the deferential AEDPA standard. The state appellate court applied the appropriate standard under *Strickland* and reasonably applied that standard to the facts of the case. Because the state Court of Appeals decided this matter on its merits, the habeas corpus court is restricted to the record presented to the state Court of Appeals. See *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400-01, 179 L. Ed. 2d 557 (2011). This is true even where, as here, a petitioner has sought an evidentiary hearing unsuccessfully in the state appellate system. See *Ballinger v. Prelesnik*, 709 F.3d 558, 561-62 (6th Cir. 2013). Petitioner had no federal constitutional right to a hearing in the state courts. See *Hayes v. Prelesnik*, 193 F. App'x

12

577, 584 (6th Cir. 2006). Based on the existing record the Court cannot conclude that the state court unreasonably decided this claim.

With respect to the failure to raise an insanity defense, under state law a criminal defendant must show that, at the time of the offense, he had a mental illness or was mentally disabled and that, as a result, he lacked the substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or conform his conduct to the requirements of the law. See MCL 768.21a; *People v. Carpenter*, 464 Mich. 223, 230-31 (2001). After a review of the record, the Court finds that the Michigan Court of Appeals reasonably concluded that there is nothing in the record indicating that Petitioner's mental-health problems prevented him from understanding the nature or the wrongfulness of his conduct or from conforming his conduct to the law. Also, he has not proffered any evidence which would demonstrate that an insanity defense was viable or would have prevailed at trial. "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 131 S.Ct. at 790 (quoting *Yarborough v. Gentry*, 540 U.S. 1 (2003)). In this case, counsel's decision to forego an insanity defense finds support in the record. Thus, the state court's conclusion that counsel was not ineffective is not contrary to, or an unreasonable application of, *Strickland*. Petitioner is not entitled to habeas relief with respect to  this claim.

Next, Petitioner claims that his counsel failed to present mitigating evidence at sentencing regarding his mental illness. The Michigan Court of Appeals reasonably found that this allegation is not borne out by the record. Though not filed as part of the Rule 5 materials, the Court of Appeals indicated that Petitioner's mental health history was detailed in the pre-sentence investigation report. The record indicates that the sentencing judge and the parties reviewed the report prior to the sentencing hearing. Moreover, the record reveals that the trial court did not base its sentence on

13

retributive factors. Rather, it imposed a lengthy sentence because it felt that Petitioner posed a substantial risk to others. This reason for the sentence would not have been affected by an argument that Petitioner is dangerous due to mental illness rather than some other reason.  The decision of the state appellate court was reasonable.

Petitioner next argues that his trial counsel was not prepared for trial. The Michigan Court of Appeals rejected the claim because Petitioner did not explain how his counsel was unprepared. The court went on to find that after reviewing the trial transcripts, it appeared that counsel was adequately prepared for trial.  This decision was reasonable. A review of the trial record shows that Petitioner's trial counsel effectively presented Petitioner's defense despite the weighty evidence of his guilt. There is no indication that counsel was unprepared to question the witnesses or present Petitioner's case to the jury. Therefore, Petitioner's claim that his attorney should have requested an adjournment is not supported by the trial record. Furthermore, Petitioner's allegations are simply too vague to support a finding that the state court's rejection of this claim was unreasonable. See, *Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) (trial counsel's failure to present a defense witness does not amount to the ineffective assistance of counsel where petitioner has failed specify the content of his testimony).

Finally, with respect to the failure to object to the reassignment of the case for trial, the Court of Appeals did not address the claim in terms of ineffective assistance of counsel. However, the state appellate court did find, as a matter of state law, that the reassignment was proper. An expression of state law like this by the state appellate court is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus, any objection to the reassignment of the case by counsel would have been futile. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v.*

14

*Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993).

### C. Double Jeopardy

Petitioner's fourth claim is that his rights under the Double Jeopardy Clause were violated when he was convicted of multiple offenses and given separate sentences for what constituted a single criminal transaction.

The test for the multiple-punishment aspect of the Double Jeopardy Clause focuses on legislative intent.  Under *Blockburger v. United States*, 284 U.S. 299, 304 (1932), where the same act or transaction constitutes a violation of two distinct statutory provisions, the test applied by the Supreme Court to determine whether Congress intended to create multiple offenses or only one, is whether each provision requires proof of an additional fact that the other does not.  If each offense has an additional element, the Supreme Court presumes that Congress intended them to be viewed as separate offenses and warrant multiple punishment. Here, in denying Petitioner's claim, the Michigan Court of Appeals noted how each of Petitioner's convictions contained at least one element that the others did not:

> The elements for assault with intent to commit murder are: "(1) an assault, (2) with an actual intent to kill, and (3) which, if successful, would make the killing murder." *People v. Lawton*, 196 Mich. App. 341, 350 (1992); MCL 750.83. The elements of felon in possession of a firearm are: (1) the defendant possessed a firearm, (2) the defendant had been convicted of a prior felony, and (3) less than five years had elapsed since the defendant had been discharged from parole or probation. *People v. Perkins*, 262 Mich. App. 267, 270 (2004). The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony. *People v. Avant*, 235 Mich. App. 499, 505 (1999). To convict a defendant of possession of marijuana, the prosecution must prove the following three elements: 1) the recovered substance is marijuana, 2) defendant was not authorized to possess the marijuana, and 3) defendant knowingly possessed the substance. MCL 333.7403(2)(d); see also *People v. Wolfe*, 440 Mich. 508, 516-517 (1992), amended 441 Mich. 1201 (1992). The elements of discharge of a weapon in a building are: (1) the defendant intentionally discharges a firearm, (2) in a facility,

15

(3) the defendant knows or has reason to believe is an occupied structure, (4) in reckless disregard for the safety of any individual. *People v. Henry*, 239 Mich. App. 140, 143 (1999). To convict a defendant of malicious use of service provide by a telecommunications service provider, the prosecution must prove that defendant "maliciously use[d] any service provided by a telecommunications service provider with intent to terrorize, frighten, or to disturb the peace and quiet of another person by . . . threatening physical harm or damage to any person . . . in the course of a conversation." MCL 750.540e. The six offenses have no point of commonality and all require proof of a fact that the other offenses do not. Because the crimes have different elements, defendant has failed to demonstrate an error affecting his substantial rights.

*Timmons*, 2011 WL 4467673, *9.

Petitioner's convictions pass the *Blockburger* test. Each offense contains an element the others do not. Nevertheless, Petitioner argues that his multiple convictions and punishments violate double jeopardy because they arose from a single criminal episode. Although the Supreme Court briefly adopted a "same conduct" test for successive prosecutions in *Grady v. Corbin*, 495 U.S. 508 (1990), the Court quickly overruled that decision in *United States v. Dixon*, 509 U.S. 688, 704, 709 n. 14 (1993), making clear that the only inquiry was whether the offenses satisfied the *Blockburger* same elements test and expressly disavowing any "same conduct" or "same transaction" test. See, *Yparrea v. Dorsey*, 64 F.3d 577, 579 (10th Cir. 1995) ("After *Dixon*, . . . double jeopardy does not occur as long as each punished offense requires proof of a fact that the other does not."). Morever, every federal court of appeals held that *Grady* was limited to successive prosecutions, and that the *Blockburger* same elements test applied to multiple punishments arising in a single prosecution. See *United States v. Parker*, 960 F.2d 498, 501-02 (5th Cir. 1992) (citing cases); see also, *Dixon*, 509 U.S. at 745-46 (Blackmun, J., concurring in the judgment in part and dissenting in part) (disagreeing with the Court's rejection of *Grady* but noting that the same elements test was the appropriate test in the multiple punishment context). Thus, Petitioner's reliance on the same conduct test to support his double jeopardy claim is misplaced, and the claim is without merit.

16

### D. Prosecutorial Misconduct

Petitioner asserts that the prosecutor committed various acts of misconduct, rendering his trial fundamentally unfair.

Petitioner first asserts that prosecution witness William Warner "initially testified that they did not see the face of the perpetrator, yet, this same witness went on to not only testify to seeing the perpetrator's face, but to actually knowing the perpetrator." Petition, p. 26. He also claims that this witness was allowed to testify that he saw bruises on his sister's face when she dated Petitioner, unfair portraying him as a "bad man." Petitioner additionally claims that the prosecutor withheld "critical documents," but he does not identify them. Lastly, he claims that the prosecutor called a witness, Russell Bartolotta, without timely naming him on the witness list. The Michigan Court of Appeals deemed the issue abandoned because of the insufficiency of Petitioner's pleadings.

The Court finds that Petitioner's claims of prosecutorial misconduct are without merit.

The United States Supreme Court made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); see also *Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*,   U.S. , 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Turning first to the perjured testimony allegation, Petitioner's claim is belied by the record. The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153

17

(1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Petitioner presented no evidence to suggest that William Warner testified falsely about identifying Petitioner as the perpetrator of the shooting. Warner's statement to police–attached to the petition–describes the events the same way they are described in the preliminary examination and trial testimony. Warner consistently stated that he could not identify the man who partially entered the house and fired the handgun. Warner described in each statement how he then chased the man outside and saw that it was Petitioner. He recognized his face, and he recognized Petitioner's car. Warner then threw a metal wrench extender through the back passenger side window of the car. The statements are all consistent, and there is no evidence or suggestion of perjury. The allegation is without merit.

Petitioner also claims that the prosecutor committed misconduct in eliciting testimony from Warner that he saw bruises on his sister's face when she dated Petitioner. The evidence was admitted under Michigan Rule of Evidence 404(b)(1) to corroborate the claim that Petitioner was in an abusive relationship with Warner's sister, and that her refusing to reveal her whereabouts to him motivated his threats to her family members.  It is not misconduct for a prosecutor to present

18

admissible evidence at trial. *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). Moreover, the admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. See *Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003). Accordingly, this claim cannot form the basis for granting habeas relief.

Petitioner next claims that he was denied critical discovery materials. The only reference he makes to being denied materials is a citation to a part of the trial record where defense counsel requests to use a drawing from the prosecutor's file of the crime scene during the cross-examination of a prosecution witness. See Tr. 2-16-10, pp. 304-305. The passage hardly indicates that Petitioner was denied exculpatory evidence. In fact, the prosecutor stated: "You have the same information but I would be happy to give you mine to use." Id. Defense counsel then indicated he wanted to use the prosecutor's drawing because  "I know you did a nice clean drawing there." Id. Petitioner simply has not shown that he was denied discovery materials.

Finally, Petitioner claims that the prosecutor did not disclose that Russell Bartolotta would testify until the day of trial. Again, the claim is not borne out by the record. A witness list dated February 9, 2010, lists Bartolotta. Trial began a week later on February 16, 2010.  To the extent that Petitioner claims that the prosecutor violated state rules by the timing of the witness list, he is not entitled to habeas relief; that is not a constitutional violation. See *Lorraine v. Coyle*, 291 F. 3d 416, 441 (6th Cir. 2002).  In any event, it is clear from the record that Petitioner was not prejudiced by the late disclosure. Bartolotta testified that Petitioner worked at a carwash with him. He saw Petitioner earlier in the day of the shooting and saw that Petitioner's car did not have any broken windows. Defense counsel cross-examined the witness about the details of their interaction the

19

morning of the shooting. There is no indication in the record that he was unprepared to effectively question the witness, and Petitioner has not indicated how earlier knowledge would have led to a more effective cross-examination. The allegation is without merit.

### E. Substitution of Trial Judge

Petitioner's final claim is that the court improperly reassigned his case to a different trial judge. He says the trial court failed to comply with Michigan Court Rule 8.111(C) when it made the reassignment. The claim is not cognizable.

As discussed above, matters of state law are not cognizable on federal habeas review. See *Estelle*, 502 U.S. at 68. Even if Petitioner had tried to frame this as a federal constitutional issue, his claim would fail because there is no federal constitutional right to have his entire criminal proceeding presided over by a single judge. See *United States v. Yellowbear*, 382 Fed. Appx. 715, 720 fn. 1 (10th Cir. 2010) ("post-trial reassignment to successor judges is permissible [under the Fed. R. Crim. P. 25(b)]; it also violates no constitutional right"); *United States v. Whitfield*, 874 F.2d 591, 593 (8th Cir. 1989) ("[p]ost-trial reassignment to a successor judge has been approved by us on more than one occasion"); *United States ex rel Fields v. Fitzpatrick*, 548 F.2d 105, 107 (3d Cir.1977) ("[w]e do not recognize a constitutional right to be sentenced by one's trial judge in every case").

In any event, it is difficult to see how Petitioner was prejudiced by the reassignment. Petitioner claims that the reassignment of his case prejudiced him regarding the admissibility of his prior conviction for second-degree murder. The record shows that the prosecution moved before trial to admit evidence of Timmons' prior convictions, and Judge Goldsmith, who was then presiding, granted the motion. In other words, the prior trial judge had ruled against Petitioner on this issue.

The case was then transferred to Judge Grant. On the morning of the first day of trial, Judge

20

Grant recognized that she had the authority to revisit Judge Goldsmith's ruling if she disagreed with it. Tr. 2/16/10, pp. 3-4. Judge Grant then heard argument and took the matter under advisement. Id., pp. 5-17. The judge, however, never modified or rescinded the order allowing the prosecution to introduce the prior convictions if Petitioner chose to testify. Therefore, the reassignment of the case worked to Petitioner's potential advantage. It is the only reason the admissibility of his prior murder conviction got a second look. Petitioner does not suggest any other basis on which he was prejudiced by the reassignment, and he does not claim that Judge Grant was somehow biased against him.

The claim is without merit and provides no cognizable basis for granting habeas relief.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner demonstrates a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court denies Petitioner a certificate of appealability.  The Court denies Petitioner permission to proceed on appeal in forma pauperis; any appeal of this decision would be frivolous.

## V. Conclusion

The Court **DENIES** the petition for a writ of habeas corpus **WITH PREJUDICE**.  The Court also **DENIES** a certificate of appealability and permission to proceed on appeal in forma pauperis.

**IT IS ORDERED.**

  /s/ Victoria A. Roberts
Honorable Victoria A. Roberts
United States District Judge

Dated: 11/15/13

22